**Mitchell J. Maher (California State Bar No. 86301)**
**Law Offices Mitchell J. Maher**
**333 South Grand Avenue, Floor**
**Los Angeles, California 90071-1504**
**Tele: (213) 943-1373   Fax: (866) 631-8198**
**E-mail: @mjmlaw.**

**Attorney for Defendant Timothy K. Isaac**

# UNITED STATES DISTRICT COURT,

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: **08:CR-00036-PGR** |
| Plaintiff, | **SENTENCING MEMORANDUM OF DEFENDANT TIMOTHY K. ISAAC** |
| v. | |
| TIMOTHY K. ISAAC, | **Honorable Paul G. Rosenblatt, Judge Presiding** |
| Defendant. | |
| | **Hearing Date: April 26, 2010** |
| | **Hearing Time: 11:00 a.m.** |

/ / /

/ / /

**TO THE CLERK OF COURT, ALL PARTIES AND COUNSEL:**

**Defendant Timothy K. Isaac**, by his counsel, hereby respectfully submits his Sentencing Memorandum as follows.

**Mitigating Circumstances as defined in 18 USC Section 3553(b)(1)**.

**Indictment**: **Count 1**, Conspiracy to introduce misbranded drugs into interstate commerce; **Counts 2** and **6**, Introduction of misbranded drugs into interstate commerce.

Acting on an informant(s) tip, on March 27, 2003 and April 2, 2003, the United States Bureau of Immigration and Customs Enforcement (BICE) and the U.S. Food and Drug Administration (FDA) executed seizure warrants on specific bank accounts of the businesses of Defendant Isaac; automobiles owned by Defendant; and product, extract and inventory of Defendant's businesses.

On May 7, 2003, Defendant as a Claimant filed an administrative claim in a non-judicial civil forfeiture proceeding to retrieve the monies, autos, product, and extract.

In or about April 2003 Defendant Isaac was contacted by the Regional Recall Director for the Food and Drug Administration with a request that he voluntarily desist and refrain from further marketing and sales of the product in question Vinarol until such time as the FDA test laboratories could verify and conclude that the product was laced with the active ingredients sildenafil citrate. Defendant Isaac agreed to discontinue the sale of Vinarol without further FDA action.

In addition, Defendant cooperated with the FDA in commencing a voluntary recall of all the product sold to consumers and to retail outlets. The result was the cancellation of orders and charge back of credit cards amounting to an expense to Defendant of approximately **$150,000.00**.

The forfeiture proceeding was settled in or about March 2003. In accordance with the Agreement, Defendant forfeited an additional **$143,048.02**.

In the process, Defendant Isaac permanently discontinued the manufacture, marketing and sale of the product Vinarol. Never again did Defendant engage in the *manufacture* of any supplement. Only did he market and sell supplements that were first inspected by the FDA

The Presentence Investigation Report states that an agent of the FDA estimates the Defendant profited from the sale of the Vinarol product '. . well in excess of $1,000,000.' That figure was of course arrived at by pure conjecture, and has resulted in an unfair enhancement of the penalty.

It is further stated in the Report that Defendant would submit to a polygraph exam to identify all assets used to facilitate the commission of any crime charged in the indictment. The Defendant has submitted to the polygraph exam conducted by the Government; and he was told that he "passed." Defendant was told by and through his counsel that he was truthful in all areas with regard to hidden assets, of which there are none, and in reference to his profit from the illegal activity, and the present state of his financial affairs.

In summary, as to the Counts of the FDA indictment, Defendant:

1. Voluntarily complied with a desist and refrain order.

2. At his own expense of approximately **$150,000.00**, conducted a voluntary recall of the product even before tests verified the existence of sildenafil citrate.

3. Forfeited the sum of **$143,048.02** as the profit from the illegal sale.

4. Discontinued the manufacture, marketing and sale of Vinarol.

5. No longer engaged in the manufacture of any supplement, only the marketing and sale of supplements inspected by the FDA.

Presently, Defendant does not manufacture, market, sell or distribute any consumer product. Defendant's business consists of conducting call centers for Club membership programs. Defendant Isaac employs approximately 250 people who receive calls from those responding to advertisements promoting discount buying Clubs.

**Information:  Counts 4 and 5, False Declaration in Bankruptcy**.

These counts are predicated upon Defendant's failure to report his financial interest in PharmaZone Laboratories in a bankruptcy filing.  The Presentence Investigation Report, receiving information from the Bankruptcy Trustee, states that Defendant Isaac fraudulently transferred his interest in PharmaZone to his Dad prior to filing bankruptcy, which is not the case.  The ownership of PharmaZone was never in Defendant's name.  No fraudulent transfer occurred.  The ownership interest was always in the name of others, even though in fact Defendant was the owner.

It is further stated that Isaac concealed his interest in a corporation named Global Investment Group, LLC.  This entity under a dba was a defendant in a civil lawsuit by Isaac as Plaintiff regarding the sale of several of his companies to Global Investment Group or its dba.  Isaac had no financial interest in this company.

The reason that the Bankruptcy Court sanctioned Defendant Isaac in the amount of $100,000.00 was his failure to comply with Rule 2004 discovery requests, which included demands for production of documents and the taking of Isaac's deposition.

The Presentence Report states that the loss to the unsecured creditors was estimated to be $1,191,396.21.  This sum was overstated by in excess of $700,000.00, which was the approximate amount of **unverified** creditors' claims.  After objections by the Trustee, the total unsecured creditors' claims were lowered to a range of $600-800,000.00.  Combining this with the $100,000 sanction and the administrative expenses, the total came to approximately $1million.

Defendant Isaac is considering an offer from the Bankruptcy Trustee to settle the entire loss for the sum of **$800,000.00**.  This offer is predicated upon the ability of Defendant to make a single payment in full.   If terms of payment are required the sum may be slightly higher.

Lastly, Defendant Isaac entered into to a stipulated order revoking his bankruptcy discharge, which has the effect of annulling his bankruptcy filing. Now, any and all creditors can pursue Defendant for any and all claims that existed prior to and during Isaac's bankruptcy proceeding.

**The Factors that are considered in imposing a sentence pursuant to the United States Code,  18 USC Section 3553(a).**

1. **18 USC 3553(a)(1)**:  **The nature and circumstances of the offense and the history and characteristics of the defendant**.  The forfeiture of profits from the fruits of the illegal sales of an adulterated product is offset by the expenses incurred by the Defendant in voluntary compliance with the FDA, and the forfeiture of the sums stated hereinabove.  It should be noted that Defendant for the past seven (7) years has not engaged in the manufacture of any supplement, only the sale of supplements first inspected by the FDA.  At this writing, Defendant is no longer selling any consumer product, but is engaged in the service business of running call centers.

2. **18 USC 3553(a)(2)(A)**:  **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment**.  The seriousness of the crimes is not in question.  However, consideration should be given to the fact that even before the indictment and for the five (5) years prior, Defendant showed respect for the law and discontinued the manufacture of supplements of any kind.  Monetary restitution and forfeiture of assets should provide just punishment, especially in light of Defendant's medical condition.

3. **18 USC 3553(a)(2)(B)**:  **The need for the sentence imposed to afford adequate deterrence**.  A criminal conviction, restitution and forfeiture in combination with the severe restrictions of a long probation should

provide adequate deterrence.  The term of probation will allow Defendant Isaac to continue the operation of his business, which at its peak employs approximately 250 people, and repay in full his fines, forfeiture and restitution.  This combination of penalties should satisfy the statutory requirement that the Court impose a sufficient sentence that is not greater than necessary.  18 USC Section 3553(a).

4. **18 USC 3553(a)(2)(C)**:  **The need for the sentence imposed to protect the public from further crimes of the defendant**.  It has been seven (7) years since Defendant Isaac committed the acts that resulted in the indictment.  As was set forth hereinabove, immediately after the serving of the warrants, Defendant voluntarily refrained from further sales of the tainted product; and, no longer is involved in the manufacture, marketing, sales and distribution of any supplements. On this basis, it is highly unlikely that Defendant will engage in that business again.

5. **18 USC 3553(a)(2)(D)**:  **The need for the sentence imposed to provide Defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**  Defendant Isaac suffered a severe stroke in May 2003, and to this day is still paralyzed on his right side.  The after effects have caused other problems with blood clots, sleep apnea, erythropoietin, hormone replacement therapy, coronary artery vessel changes and calcification, just to name the most prominent.  It is has been suggested that for survival Defendant Isaac should maintain access to routine and emergent medical care.  He will more than likely require a multi-disciplinary medical team directed by internal medicine and neurology.  Defendant, inter alia, is involved in anti-coagulant therapy that includes emergency care bleeding, monitoring for blood clots; and dietary restrictions for blood clots.  A sentence of probation would best satisfy the need for Defendant's medical care.

For the foregoing reasons, the undersigned Defendant Timothy K. Isaac, by and through his counsel, respectfully requests that this Court sentence Defendant Isaac to probation together with restitution, fines and forfeiture as outlined.

Respectfully submitted,

**/s/ Mitchell J. Maher**

**Dated: April 19, 2010**

**Mitchell J. Maher**

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

     I am employed in the County of Los Angeles, over the age of eighteen and not a party to this action. My business address is 333 South Grand Avenue, 25th Floor, Los Angeles, California 90071.

     I certify that I am registered with the USDC, District of Arizona as a CM/ECF user; and that on April 20, 2010 I electronically filed the foregoing document entitled **SENTENCING MEMORANDUM OF DEFENDANT TIMOTHY K. ISAAC**, with the Notice of Electronic Filing to the registrants, including:

     AUSA Peter Sexton, peter.sexton@usdoj.gov ; and,

     Honorable Paul G. Rosenblatt, Rosenblatt_chambers@azd.uscourts.gov

     I declare under penalty of perjury that the above is true and correct and that this declaration is executed at Los Angeles, California, April 20, 2010.

                                          /s/ Mitchell J. Maher
                                        _____
                                        **Mitchell J. Maher**