DENNIS K. BURKE
United States Attorney
District of Arizona

PETER SEXTON
Assistant U.S. Attorney
Arizona State Bar No. 011089
peter.sexton@usdoj.gov
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>      v.<br><br>Timothy K. Isaac,<br><br>            Defendant. | CR-08-00036-001-PHX-PGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

**1.   Introduction.**

Defendant's advisory Guidelines range is 97-121 months. Because defendant cooperated and consolidated several prosecutions into one combined proceeding, the United States recommends that the Court depart or vary downward from the suggested Guidelines range.

**2.   Cooperation and Extraordinary Acceptance of Responsibility.**

   **a.   FDA Prosecution.**

Of the four investigations brought against defendant, this was the only indicted matter. In the FDA matter, defendant pled guilty and agreed to cooperated against others, both charged and uncharged. This was useful because his co-defendants, Laura and Bryan Gillette, while cooperating themselves, were unpredictable in many respects. [1] In his debriefing, defendant was honest about his major role in this offense, as well as the role of others who assisted in manufacturing and marketing his unapproved product. While no additional charges were

---

[1]  This was later borne out by the suicide of Bryan Gillette.

brought against others who were involved in this case, his cooperation did allow the government to better assess what had occurred and decide whether further prosecutions were warranted.

### b. **IRS Prosecution.**

The IRS was the last agency brought into this consolidated matter. In investigating defendant in the other three matters, and after defendant had been indicted in the FDA prosecution, the IRS was asked to look into certain tax filings by defendant Isaac. Normally, a tax investigation of this sort would take approximately two years to process within the IRS and the tax division of the Department of Justice. This lengthy process was greatly streamlined because defendant Isaac agreed to cooperate with the IRS from the beginning, even while under indictment for the FDA charges.

From the moment defense counsel was contacted about adding a tax prosecution to defendant's cooperation and overall exposure, defendant and his counsel began cooperating with the IRS. First, defendant met with the IRS case agent and cooperated with the agent in determining the amount of unreported income for the 2005-2007 tax years. This included both unreported income as well as the payment of personal expenses from corporate accounts. Second, defendant filed corrected returns for the years in question, which were verified by the IRS. Third, defendant did not in any way improperly dispute the amount of taxes, interest and penalties the IRS assessed for those years. [2]

This cooperative process significantly facilitated the resolution of defendant's tax issues for the years in question. The time and expense saved by this pre-charging assistance was very much appreciated by the government. The scope of his cooperation, and his acceptance of responsibility, has been uncommon.

---

[2] Defendant has paid very little of what is owed, and is attempting to resolve the three tax years in question, as well as tax year 2008, through an "offer in compromise" process. In the government's view, defendant Isaac should have done much more to alter his lifestyle sooner to free up funds to pay at least some of his accrued tax obligations.

### c. **Bankruptcy Prosecution.**

This investigation was begun by the U.S. Trustee's Office before the FDA indictment was returned, but it was brought to the attention of the U.S. Attorney's Office only after defendant was indicted. Again, as he had agreed to do with the IRS, defendant pled guilty to his bankruptcy misconduct. Defendant acknowledged his lies in the bankruptcy proceeding, and has not disputed his overall exposure to creditors or the bankruptcy court. [3/] Again, his willingness to include this matter with the other three has greatly reduced the amount of investigative, prosecutorial and judicial time spent on this bankruptcy prosecution.

### d. **Supplemental Social Security Income Investigation.**

This investigation was opened by the U.S. Attorney at about the time defendant was indicted in the FDA matter. Through counsel, defendant agreed to consolidate this matter with the other three, and to cooperate fully with the determination of criminal liability and loss to the government. Defendant readily acknowledged he was not entitled to the supplemental disability income he received, [4/] and has repaid Social Security for the sums he wrongfully obtained.

### e. **Combined Resolution.**

I have never had a case that cooperatively combined this many investigative matters. Defense counsel and defendant agreed to this global arrangement without much back and forth, and the United States believes the consolidated result significantly reduced the amount of time and work of several federal agencies and the judiciary. While the conduct itself should be punished appropriately, the manner of capitulation is believed to be deserving of some mitigation by the Court at sentencing. Defendant, when caught, through the expeditious advice of his

---

[3/] The only area of concern came in regard to whether the defendant could negotiate the payment of lesser amounts to his creditors. After some communications with the investigator for the U.S. Trustee, the amount of restitution defendant owed was not to be compromised for sentencing purposes, but if individual creditors wanted to negotiate lesser amounts in a business context, the creditors and defendant were not prohibited from doing so. Since the defendant may not have sufficient assets to pay all his creditors, individual creditors were free to resolve their liability for less than what they were owed.

[4/] Though clearly impaired from a stroke, he was able to work and earn sufficient revenue from his many businesses.

counsel, did what very few would have agree to do. As such, he not only gave full cooperation, but also exhibited extraordinary acceptance of responsibility. In the government's view, his conduct in resolving all four matters in this way is deserving of a departure or variance from the advisory Guidelines range.

**3.  Sentencing Factors.**

    **a.  Nature and Circumstances of the Offenses.**

The defendant's conduct was far reaching. He was an administrative and regulatory nightmare to the federal government. The scope and duration of his regulatory abuses would ordinarily suggest a harsher treatment. That being said, when defendant's conduct was discovered, he acknowledged his wrongdoing and cooperated extensively with the government to unwind his misconduct. His cooperative ending mitigates somewhat the overall impact of his misconduct.

    **b.  History and Circumstances of the Defendant.**

Until recently, he has had no significant criminal history. Though he is only in Criminal History I, the fact that he has pled guilty to charges arising out of four separate investigations undercuts somewhat the clean nature of his record up to this point.

    **c.  Medical Care.**

Defendant Isaac has many medical issues. He appears to genuinely need the assistance and care of another on a daily basis. He is not so impaired, however, as to make incarceration impractical. His impairments do somewhat suggest that a sentence below the advisory Guidelines range would be warranted.

    **d.  Restitution.**

Defendant has paid back Social Security for the approximately $40,000 he stole from that agency. He has paid very little of the $250,000+ he owes the IRS, and still owes many creditors more than $1 million from his fraudulent bankruptcy action. This amount of debt might suggest that less time be given so that the defendant could repay those he harmed. Unfortunately, defendant has done very little during the pendency of this sentencing to repay his debts, yet he

continued to live a lavish lifestyle and pay a monthly mortgage/rent of $11,000. [5] If defendant had abandoned his extravagant home and its monthly costs along time ago, he could have paid off much more of his outstanding debt through his otherwise positive cash flow.

Defendant has filled out a detailed financial disclosure form about his assets and liabilities, and passed a polygraph regarding its accuracy. He has an entrepreneurial background, and is likely to be someone who will one day have the means to pay his restitution. Thus, this factor would suggest a lesser amount of incarceration.

### e.  **Deterrence and Protection to the Public.**

The punishment should address deterring others from emulating his ways. It should also be enough to discourage the defendant from doing this type of conduct in the future. Given the amount of illegal conduct involved, and the disregard he showed to almost every statutory and regulatory framework he encountered, these factors would suggest a higher sentence is appropriate.

### 4.  **Sentencing Recommendation.**

Overall, the defendant has done much to mitigate his circumstance. His willingness to acknowledge all this illegal conduct in a global fashion has saved the government much time and expense. His slight criminal history, significant medical issues, and restitution obligation also suggest greater leniency. Offsetting these positive factors, in part, is the sheer volume of illegal misconduct.

The government would like this sentence to reward defendant's willingness to acknowledge what he obviously did, and not needlessly put the government through the costs of proving him guilty in each case. For that reason, the United States would recommend that the Court go below the advisory range and sentence defendant to 72 months of custody. A sentence

---

[5] His expensive home has a mortgage of $2-3 million in his father's name, though his father does not make the mortgage payment. Defendant has always been the beneficial owner, and his dad is on the deed and mortgage in name only. Defendant has lived in the home from the beginning, and has made the payments to service the debt and maintain the property.

5

at this level would do justice to the various sentencing factors, as well as give defendant credit for his timely and beneficial acknowledgment of wrongdoing.

Respectfully submitted this 20th day of April, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

S/*Peter Sexton*

PETER SEXTON
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the attached document to be electronically transmitted to Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mitchell Maher
Joseph Chornenky